IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
IN OPEN COURT

JUN 2 8 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:12-CR-180 |
| | ) | |
| v. | ) | Count 1: Conspiracy |
| | ) | (18 U.S.C. § 1349) |
| IRVINE JOHNSTON KING, | ) | |
| (All Counts) | ) | Counts 2-23: Health Care Fraud |
| AISHA RASHIDATU KING, | ) | (18 U.S.C. § 1347) |
| (Counts 1, 11-25) | ) | |
| | ) | Counts 24-25: Aggravated Identity Theft |
| Defendants. | ) | (18 U.S.C. § 1028A) |
| | ) | |
| | ) | Forfeiture Notice |

### INDICTMENT

June 2012 Term - At Alexandria

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

### INTRODUCTORY ALLEGATIONS

1. The Medicaid Program ("Medicaid") provides medical assistance to low-income individuals who meet certain eligibility requirements. Funding for the Medicaid Program comes from both federal and state governments. In the Commonwealth of Virginia, the Medicaid Program is administered by the Department of Medical Assistance Services ("DMAS"). DMAS is responsible for payment to the medical service providers for care and services received by Medicaid eligible individuals.

2. Home health agencies provide personal care and/or respite care services, which are designed to prevent or reduce unnecessary institutional care by providing eligible individuals with certified home health aides who perform basic health related services. Home health aide services

include assisting with personal hygiene, eating, walking, meal preparation, feeding, and taking and recording blood pressure, pulse, and respiration.

3. Home health agencies also provide private duty nursing, i.e., skilled, in-home nursing care provided by a registered nurse ("RN") or a licensed practical nurse ("LPN") under the supervision of a registered nurse. These services are rendered according to a plan of care, which enables the individual to remain at home rather than in a hospital or nursing facility.

4. DMAS reimburses providers for the amount of time that service is provided.

5. DMAS requires that attendants record the personal and/or respite care services they have provided, including arrival and departure times and any significant physical, social, and emotional conditions of the recipient. The attendant and either the recipient or the recipient's caregiver must sign the records weekly. DMAS accepts the provider attendant record as proof that services were rendered.

6. An RN must supervise home health aides who provide personal and/or respite care. When only home health aide services are being furnished, an RN must make a supervisory visit to the recipient's residence at least once every 60 days when the aide is furnishing care.

7. Under DMAS regulations, when a recipient begins receiving home health nursing services, an RN must perform an assessment, which must be maintained in the recipient's record throughout the duration of the treatment. Nursing care plans based on the admission assessment are required for all recipients and must be updated as the recipient's nursing care needs change. In addition, nursing visit notes, completed by RNs and LPNs for skilled nursing care and which describe the treatment and/or instruction provided, are required at the time of each visit.

8. According to DMAS regulations, the Medicaid criteria for general reimbursement of Private Duty Nursing services include a signed and dated physician order, a plan of care and

assessment, and documentation available for services rendered and billed. The nursing documentation DMAS requires for private duty nursing services includes, among other things, a daily nursing log. Services not specifically documented in the recipient's record as having been rendered are considered not to have been rendered, and DMAS may recover any inappropriate payment. In addition, DMAS will reimburse for a maximum of 16 hours per 24-hour period per household for private duty nursing.

9. In general, to obtain reimbursement for health care services, the provider must submit bills, or claims, to the patient's insurance carrier. They may be electronic claims sent by wire or paper claims sent by mail. Electronic claims are imaged and paper claims printed onto a CMS 1500 form that typically contains the patient's name, date of birth, insurance company member number, service rendered, provider's name, and associated service charge. Once the claim has been received by the insurance carrier, it is processed. After the claim has been approved, a check for the service is sent to the insured or provider.

10. From in or about November 2007 through in or about June 2011, AISHA RASHIDATU KING ("AISHA KING") and IRVINE JOHNSTON KING ("IRVINE KING") owned and operated Bright Beginnings Healthcare Services Inc. ("Bright Beginnings"), a home health care business located in Woodbridge, Virginia.

11. AISHA KING was the President of Bright Beginnings. She managed employees and oversaw office operations.

12. IRVINE KING was the Vice President of Bright Beginnings. He was responsible for, among other things, Bright Beginnings' insurance billings.

13. First Health Services Corporation ("First Health") and Affiliated Computer Services ("ACS") were fiscal intermediaries for DMAS.

3

## COUNT 1

(Conspiracy to Commit Health Care Fraud)

14. The allegations set forth in Paragraphs 1 through 13 are re-alleged and incorporated by reference in their entirety as if set forth herein.

15. From at least March 2008 through in or about June 2011, in the Eastern District of Virginia and elsewhere, IRVINE KING and AISHA KING did unlawfully and knowingly combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, that is to commit the offense of health care fraud, in violation of Title 18, United States Code, Section 1347, by knowingly and willfully executing and attempting to execute a scheme and artifice to defraud and obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, DMAS, a health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services, namely, by causing the submission of false claim forms to First Health and ACS.

### Manner and Means to Accomplish the Conspiracy

It was part of the conspiracy that:

16. IRVINE KING and AISHA KING submitted or caused to be submitted false claims to Medicaid for services they knew were not provided.

17. IRVINE KING and AISHA KING directed a Bright Beginnings employee to lie to Medicaid about claims billed by IRVINE KING for services the Defendants knew were not provided.

4

18. IRVINE KING and AISHA KING directed a Medicaid recipient's caregiver to sign blank Medicaid documents that Defendants later used to support falsified claims submitted by IRVINE KING to Medicaid.

19. IRVINE KING and AISHA KING directed others to organize falsified documents that IRVINE KING later submitted to Medicaid in support of falsified Medicaid billing.

### Overt Acts

In furtherance of said conspiracy and to effect the objects thereof, IRVINE KING and AISHA KING committed overt acts in the Eastern District of Virginia and elsewhere, including the following:

20. IRVINE KING and AISHA KING instructed an employee to lie to Medicaid about the following matters:

    a. That respite care hours were provided to patient Ryder J. even though the care was not provided.

    b. That an RN had conducted the monthly required visits for Ryder J. even though no RN from BRIGHT BEGINNINGS had ever visited Ryder J.

    c. That an RN provided services to Ryder J. when in fact an unlicensed individual had provided those services.

21. IRVINE KING and AISHA KING told an employee that it was the employee's responsibility to convince Ryder J.'s mother to lie to Medicaid regarding these matters.

22. On March 30, 2008, a false claim for $2,730.00 was submitted to DMAS for patient Holligan W.

23. In 2009, AISHA KING asked the father of patient Rehan A. to sign blank Medicaid time sheets. IRVINE KING and AISHA KING later used, or caused to be used, those

Medicaid time sheets as a basis to bill Medicaid for services that IRVINE KING and AISHA KING knew had not been provided.

24. In or about May 2009, in response to an audit conducted for DMAS that identified numerous deficiencies and an overpayment by DMAS in the amount of $435,265.64, IRVINE KING and AISHA KING organized falsified documents and later submitted them to DMAS. Based on these falsified documents, DMAS reduced the amount of the overpayment to $151,887.32.

25. From in our about May 2009 through in or about April 2010, nursing documentation related to the care of patients Holligan W. and Dhruv B., which were subjects of the audit, was falsified.

26. From in or about May 2009 through in or about April 2010, IRVINE KING and AISHA KING directed others to organize falsified nursing documentation for patients Holligan W. and Dhruv B. and then submitted or caused to be submitted that documentation to DMAS in order to justify falsified claims submitted during approximately February 2008 through September 2008.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS 2 THROUGH 23

(Health Care Fraud)

27. The allegations set forth in Paragraphs 1 through 13 and 16 through 26 are re-alleged and incorporated by reference in their entirety as if set forth herein.

### II. THE SCHEME TO DEFRAUD A HEALTH CARE BENEFIT PROGRAM

28. From at least March 2008 through in or about June 2011 within the Eastern District of Virginia and elsewhere, IRVINE KING and AISHA KING knowingly and willfully executed and attempted to execute a scheme and artifice to defraud and obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, DMAS, a health care benefit program, as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, and payment for, health care benefits, items, and services, namely, by causing the submission of false claim forms to First Health and ACS.

29. It was part of the scheme and artifice that IRVINE KING regularly billed Medicaid and directed Medicaid to be billed for health care services for Medicaid recipients knowing that such services were not provided.

### III. EXECUTION OF THE SCHEME

30. The scheme to defraud was executed in the following manner:

   a. IRVINE KING and AISHA KING submitted and caused to be submitted claims to First Health and ACS, falsely claiming that Bright Beginnings had provided certain home health care services to Medicaid recipients when, in fact, as IRVINE KING and AISHA KING well knew, the home health care services were not provided.

b. By causing the submission of these false claims, IRVINE KING and AISHA KING caused direct deposits to be wired from First Health/ACS in Richmond, Virginia to Bright Beginnings in Woodbridge, Virginia, both within the Eastern District of Virginia.

IV. SUBMISSION OF FALSE CLAIMS

31. On or about the dates listed below, in the Eastern District of Virginia and elsewhere, IRVINE KING, for the purpose of executing the scheme and artifice to defraud, knowingly and willfully caused the following false claims, among others, to be submitted to DMAS through First Health and ACS:

| COUNT | DATES OF SERVICE | SERVICE TYPE | PATIENT | AMOUNT BILLED | APPROX. DATE BILL SUBMITTED |
|---|---|---|---|---|---|
| 2 | 12/14-20/2009 | LPN | Lily N. | $3,057.60 | 12/26/2009 |
| 3 | 12/14-20/2009 | Respite | Lily N. | $546.00 | 12/26/2009 |
| 4 | 2/1-6/2010 | LPN | Brendan B. | $1,037.40 | 2/13/2010 |
| 5 | 2/1-6/2010 | RN | Brendan B. | $1,984.50 | 2/13/2010 |
| 6 | 2/1-6/2010 | LPN | Jessica B. | $3,057.60 | 2/13/2010 |
| 7 | 2/1-7/2010 | Respite | Eva-Simone B. | $3,057.00 | 5/1/2010 |
| 8 | 2/8-14/2010 | Respite | Eva-Simone B. | $3,057.00 | 5/1/2010 |
| 9 | 2/15-21/2010 | Respite | Eva-Simone B. | $3,057.00 | 5/1/2010 |
| 10 | 2/22-28/2010 | Respite | Eva-Simone B. | $3,057.00 | 5/1/2010 |

32. On or about the dates listed below, in the Eastern District of Virginia and elsewhere, IRVINE KING and AISHA KING, for the purpose of executing the scheme and artifice to defraud, knowingly and willfully caused the following false claims, among others, to be submitted to DMAS through First Health and ACS:

8

| COUNT | DATES OF SERVICE | SERVICE TYPE | PATIENT | AMOUNT BILLED | APPROX. DATE BILL SUBMITTED |
|---|---|---|---|---|---|
| 11 | 3/24-30/2008 | LPN | Holligan W. | $2,730.00 | 4/5/2008 |
| 12 | 4/14-20/2008 | LPN | Holligan W. | $2,730.00 | 4/26/2008 |
| COUNT | DATES OF SERVICE | SERVICE TYPE | PATIENT | AMOUNT BILLED | APPROX. DATE BILL SUBMITTED |
| 13 | 5/26-31/2008 | LPN | Holligan W. | $2,457.00 | 6/7/2008 |
| 14 | 4/14-20/2008 | LPN | Dhruv B. | $2,784.60 | 4/26/2008 |
| 15 | 7/14-20/2008 | LPN | Dhruv B. | $3,057.60 | 7/26/2008 |
| 16 | 8/18-24/2008 | LPN | Dhruv B. | $3,057.60 | 8/30/2008 |
| 17 | 12/07-13/2009 | Personal Care | Rehan A. | $456.00 | 12/19/2009 |
| 18 | 12/14-20/2009 | Personal Care | Rehan A. | $456.00 | 12/26/2009 |
| 19 | 12/21-27/2009 | Personal Care | Rehan A. | $456.00 | 1/16/2010 |
| 20 | 1/11-17/2010 | Personal Care | Rehan A. | $456.00 | 1/23/2010 |
| 21 | 1/18-24/2010 | Personal Care | Rehan A. | $456.00 | 1/30/2010 |
| 22 | 2/8-14/2010 | Personal Care | Rehan A. | $456.00 | 2/20/2010 |
| 23 | 3/22-28/2010 | Personal Care | Rehan A. | $456.00 | 4/3/2010 |

(In violation of Title 18, United States Code, Sections 1347 and 2.)

## COUNT 24

(Aggravated Identity Theft)

33. The allegations set forth in Paragraphs 1 through 32 are re-alleged and incorporated by reference in their entirety as if set forth herein.

34. To receive reimbursement for personal care, respite care, and skilled nursing care services defendants IRVINE KING and AISHA KING caused the submission of claim forms to First Health and ACS. First Health and ACS processed and paid claims submitted by defendants IRVINE KING and AISHA KING based on the claimed personal care, respite care, and skilled nursing care services provided.

35. Defendants IRVINE KING and AISHA KING used the Medicaid recipient's name, date of birth, and insurance identification number in order to identify the recipient for which service was claimed and to receive payment for such claims.

36. On or about December 19, 2009 in the Eastern District of Virginia, defendants IRVINE KING and AISHA KING, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit: the name, date of birth, and insurance identification number of Rehan A., during and in relation to a violation of Title 18, United States Code, Section 1349, to wit: conspiracy to commit health care fraud as alleged in Count 1. Defendants IRVINE KING and AISHA KING used the name, date of birth, and insurance identification number of Rehan A. on claims seeking reimbursement, without lawful authority to do so. The claims IRVINE KING and AISHA KING submitted or caused to be submitted stated that Bright Beginnings provided health care services to Rehan A. when Defendants in fact knew that no such services were provided. DMAS processed and paid these claims based on the stated hours and the use of Rehan A.'s identifying information.

(In violation of Title 18, United States Code, Section 1028A).

## COUNT 25

### (Aggravated Identity Theft)

37. The allegations set forth in Paragraphs 1 through 32 are re-alleged and incorporated by reference in their entirety as if set forth herein.

38. To receive reimbursement for personal care, respite care, and skilled nursing care services defendants IRVINE KING and AISHA KING caused the submission of claim forms to First Health and ACS. First Health and ACS processed and paid claims submitted by defendants IRVINE KING and AISHA KING based on the claimed personal care, respite care, and skilled nursing care services provided.

39. Defendants IRVINE KING and AISHA KING used the Medicaid recipient's name, date of birth, and insurance identification number in order to identify the recipient for which service was claimed and to receive payment for such claims.

40. On or about December 26, 2009 in the Eastern District of Virginia, defendants IRVINE KING and AISHA KING, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit: the name, date of birth, and insurance identification number of Rehan A., during and in relation to a violation of Title 18, United States Code, Section 1349, to wit: conspiracy to commit health care fraud as alleged in Count 1. Defendants IRVINE KING and AISHA KING used the name, date of birth, and insurance identification number of Rehan A. on claims seeking reimbursement, without lawful authority to do so. The claims IRVINE KING and AISHA KING submitted or caused to be submitted stated that Bright Beginnings provided health care services to Rehan A. when Defendants in fact knew that no such services were provided. DMAS processed and paid these claims based on the stated hours and the use of Rehan A.'s identifying information.

(In violation of Title 18, United States Code, Section 1028A).

## FORFEITURE NOTICE

41. Pursuant to Rule 32.2(a), the Defendants are hereby notified that, if convicted of the offenses alleged in Counts 1 – 23 this Indictment, then the Defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all property, real and personal, that constitutes, or is derived from, proceeds traceable to, and that the Defendant obtained directly or indirectly from, the commission of the offense, to wit, at least $624,155.24.

42. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the Defendants shall forfeit substitute property if, by any act or omission of the Defendants, the value of the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

(Pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p)).

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

FOREPERSON OF THE GRAND JURY

NEIL H. MacBRIDE
UNITED STATES ATTORNEY

By: _____
Timothy D. Belevetz
Assistant U.S. Attorney

Steven W. Grist
Special Assistant U.S. Attorney